99 So.2d 208

### Elvie WHATLEY

v.

### Mrs. E. S. NELSON.

4 Div. 930.

Supreme Court of Alabama.

Dec. 19, 1957.

Tipler & Fuller, and W. H. Baldwin, Andalusia, for appellant.

Ed Brogden, Jr., Andalusia, for appellee.

MERRILL, Justice.

Mrs. E. S. Nelson, complainant-appellee, filed a bill against her niece, Mrs. Elvie Whatley, appellant, to cancel a deed which Mrs. Nelson executed to Mrs. Whatley, in which the grantor reserved a life interest. The ground for the cancellation is Tit. 20, § 15, Code 1940, it being alleged that a material part of the consideration for said deed was the promise of grantee to support the grantor.

After hearing the testimony, the trial court found the issues in favor of Mrs. Nelson and declared the deed to be null and void.

The appellant candidly states her position in brief as follows:

"The appellant's single insistence on this appeal is that there is insufficient evidence in the record to support

the finding by the trial court that a material part of the consideration for the deed attacked by the appellee was an agreement by the appellant to support the appellee during her lifetime, and the decree granting appellee relief. We realize that in attempting to obtain a reversal our task is difficult due to the fact that the testimony was taken orally before the trial court, and this Honorable Court, in such cases, affords the findings of trial court a presumption of correctness. We insist, however, that there is absolutely no evidence in this record upon which to base a finding that the necessary agreement was made by the appellant, and the presumption in favor of the trial court's findings cannot supply a factual basis upon which to base the decree under attack."

There were two dwellings near each other on the 80 acres described in the deed. Mrs. Nelson and her husband lived in one, Mrs. Whatley and her husband in the other. The Whatleys moved in the house they occupied in 1951, and paid rent to the Nelsons. Mr. Nelson died in February, 1953. On March 7, 1953, Mrs. Nelson executed a deed to the property to Mrs. Whatley, reserving a life estate. The consideration expressed in the deed was "five dollars and love and affection." It is undisputed that no monetary consideration passed between them.

The parties are uneducated people and unfamiliar with legal terms and customary practices relating to conveyances of real property. This was not an easy case for the lower court to decide and it presents us with considerable difficulty because the actual terms of the agreement were made in the presence of Mrs. Nelson, Mrs. Whatley and her husband, and none of them are clear as to all the details in their testimony.

We cannot agree with appellant that "there is absolutely no evidence in this record upon which to base a finding that the necessary agreement was made by the appellant." We quote certain statements

from both direct and cross-examination of Mrs. Nelson:

"* * * They hadn't been up long and we were all talking and they told me, or she did, that they would stay there and take care of me and see after me if I would give them a notice where the other heirs couldn't come in and take it from them; that it wouldn't be right for them to wait on me and take care of me and then the others share the same as they did. I told them, 'that's right, if you are the ones that waits on me you are supposed to have what I got.' I says, 'I'll do that.' * * *

* * * * * *

"Q. Did they state to you what they would do for you for that showing? A. They said they would see after me and take care of me, and I figured that was plenty if they taken care of me.

"Q. And did they give you anything, any money or anything else, or any other type promise to get you to make this deed? A. Nothing more than to take care of me, and as far as money, they have never given me any money.

* * * * * *

"A. I just remember telling them that I would give them the paper if they would take care of me. If they taken care of me the other heirs didn't have a right to it.

* * * * * *

"Q. So the support you are talking about you were to get was to be your part of the cultivation of the land? A. No, sir. That wasn't mentioned about the land no way. They were to take care of me.

* * * * * *

"Q. Did she tell it like you wanted it or some other way? A. She just told him (the lawyer drawing the deed) I wanted to give her a paper on the land to take care of me.

"Q. She told him that you wanted to give her a paper on the land for her to take care of you? A. That I was going to give them a paper on my place to take care of me what time I lived, and he just went ahead and made the papers."

The following is from the testimony of one Carter, a brother of Mrs. Whatley and nephew of Mrs. Nelson, relating to a conversation he had with his sister after the conveyance was executed:

"Q. You were talking to Elvie Whatley, your sister? A. Best of my knowledge, I asked Mrs. Whatley had she got a paper and she said she had. She said she told Mrs. Nelson she felt like if her and her husband stayed and seen after her until her death she felt like she ought to have a showing so that the other heirs wouldn't come in and share and share like her.

\* \* \* \* \* \*

"The Court: What was it you said that the lady told you about it? A. She just said, Judge, she told Mrs. Nelson that if her and her husband stayed there and seen after her until her death she felt like she ought to have a showing where the rest of the heirs would not come in and share like them."

Appellant and her husband denied that there was any mention of support made by Mrs. Nelson, and appellant denied the conversation testified to by her brother. But we think the evidence was sufficient to support the finding of the lower court that a material part of the consideration for the conveyance was an agreement to support the grantor, and the usual presumption follows a finding of fact by the trial court where the testimony was ore tenus.

The decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and COLEMAN, JJ., concur.